IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**HAROLD LEWIS**                                                                                         **PLAINTIFF**

**V.**                                                            **NO. 3:20-CV-223-DMB-RP**

**PANOLA COUNTY, MISSISSIPPI, and
SHANE PHELPS, Individually, and in his
Official Capacity as Sheriff of Panola
County, Mississippi**                                                            **DEFENDANTS**

**OPINION AND ORDER**

Harold Lewis alleges he was not hired as a Panola County deputy sheriff because he made public statements supporting the political opponent of Panola County Sheriff Shane Phelps and supporting his own candidacy for supervisor against Phelps' close friend. The County and Phelps seek summary judgment on Lewis' First Amendment retaliation claim on grounds that Lewis has failed to provide sufficient evidence to maintain the claim. Because the Court concludes the evidence proffered by Lewis does not support his retaliation claim, summary judgment will be granted.

**I
Procedural History**

On July 30, 2020, Harold Lewis filed a complaint in the United States District Court for the Northern District of Mississippi against Panola County, Mississippi, and Shane Phelps, individually and in his official capacity as sheriff of Panola County. Doc. #1. The complaint asserts a First Amendment retaliation claim brought under 42 U.S.C. § 1983. *Id.* at 4. On May 24, 2021, the defendants moved for summary judgment. Doc. #46. After receiving a requested extension, Lewis responded in opposition on June 11, 2021. Docs. #40, #50. The defendants

replied on June 25, 2021.[1] Doc. #52.[2] On October 1, 2021, the defendants filed a motion in limine, Doc. #57, as did Lewis, Doc. #58. A response was filed to each. Docs. #59, #61.

## II
## Standard

A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (internal quotation marks omitted).

The "party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Jones*, 936 F.3d at 321 (alterations omitted). Where, as here, the movant does not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321 (cleaned up). When both parties submit evidence of contradictory facts, "courts may not make credibility determinations or weigh the evidence" but rather must resolve "factual

---

[1] Because the defendants filed their reply fourteen days after the filing of Lewis' opposition, the reply is untimely. *See* L.U. Civ. R. 7(b)(4) ("Counsel for movant desiring to file a rebuttal may do so within seven days after the service of the respondent's response and memorandum brief."). However, since Lewis did not object to the late filing, the Court will excuse its untimeliness so as not to delay deciding this case on its merits.

[2] The defendants' memorandum filed with their reply is substantively the same memorandum filed with their summary judgment motion. *Compare* Doc. #47 *with* Doc. #53. Because the reply memorandum puts the defendants over the page limit mandated by Local Rule 7(b)(5) and because its content was considered in the initial memorandum, the Court will not consider the reply memorandum. *See* L.U. Civ. R. 7(b)(5) ("Movant's original and rebuttal briefs together may not exceed a total of thirty-five pages ….").

controversies in favor of the nonmoving party." *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018).

### III
### Factual Background

Harold Lewis was hired as a Panola County deputy sheriff on April 1, 2014. Doc. #50-1 at 1. At the time, Dennis Darby served as the sheriff of Panola County. *Id.*

In 2019, Shane Phelps ran against Darby for the sheriff position and Lewis ran against Phelps' friend,[3] James Birge,[4] for District 1 Supervisor. Doc. #46-7 at 23. In October 2019, during a rally at a fire station, Lewis spoke publicly in support of his own candidacy and in support of Darby. Doc. #50-1 at 2. Phelps was present at the rally. *Id.*; Doc. #46-3 at 27; Doc. #46-7 at 24.

In November 2019, Phelps won the sheriff's election and Birge won the election for District 1 Supervisor. Doc. #46-3 at 7; Doc. #50-1 at 2. Thereafter, on November 11, 2019, Phelps, as sheriff-elect, informed all Panola County Sheriff's Department employees they were to reapply for their positions if they wished to continue working under his administration. Doc. #46-3 at 10; Doc. #46-7 at 28; Doc. #50-1 at 2. Any interested individual, including members of the public, was required to submit an application by December 6, 2019. Doc. #50-1 at 2. Lewis submitted an application for a deputy sheriff position on November 25, 2019. Doc. #46-1.

Phelps, his soon-to-be chief deputy Reginald Lantern, and his soon-to-be major Bill McGee drafted a list of individuals who were going to be hired when Phelps assumed office on January 6, 2020. Doc. #46-3 at 15–16. McGee also created an unofficial "no-hire" list in his personal notebook. *Id.* at 16–17. A copy of the "hire" list was distributed at a Panola County board of supervisors meeting on December 18, 2019. *Id.* at 15–16; Doc. #50-1 at 2–3. At the same meeting,

---

[3] *See* Doc. #50-1 at 1.

[4] Birge is referred to as "Burge" in Lewis' deposition transcript. *See* Doc. #46-7 at 23.

3

Chris Franklin, Darby's chief deputy,[5] acquired the no-hire list,[6] which included Lewis' name. Doc. #46-3 at 19.

After being informed by Franklin that his name was on the no-hire list, Lewis submitted a letter of resignation on December 18, 2019. Doc. #50-1 at 3; Doc. #46-7 at 31; Doc. #46-2. Phelps did not have Lewis' resignation letter at the time he created the hire list. Doc. #46-3 at 19.

Phelps assumed the position as sheriff on January 6, 2020. *Id.* at 9. Lewis was never interviewed by Phelps for a deputy sheriff position, nor was he hired. Doc. #50-1 at 2.

## IV
## Analysis

Lewis premises his First Amendment retaliation claim on Phelps' refusal to hire him after he made public statements in support of Phelps' opponent, Darby, and campaigned against Phelps' close friend, Birge. Doc. #1 at 4. The defendants argue summary judgment is proper because (1) "Phelps was not acting 'under color of state law' as required by 42 U.S.C § 1983 at the time of the alleged aggrievance;" (2) if he was acting under color of state law, Lewis fails to establish a First Amendment violation; and (3) Phelps is entitled to qualified immunity. Doc. #46.

### A. Under Color of State Law

"To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021). "A person acts 'under color of state law' if he engages in the misuse of power,

---

[5] Doc. #50-2 at 1.

[6] The parties dispute how Franklin acquired the no-hire list. Lewis presents affidavit testimony of Franklin that, after writing a list of individuals Phelps would not be hiring, McGee handed Franklin the list. Doc. #50-2 at 1–2. Phelps testified that the "list was not given to Chris Franklin" and someone must have taken a picture of the list during the meeting. Doc. #46-3 at 18–19. How Franklin obtained the list is immaterial to the resolution of the summary judgment motion.

4

possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010) (cleaned up).

The defendants argue that Phelps "could not have been acting 'under color of state law' until he actually assumed the office of Panola County Sheriff" and that he took "no tangible adverse action against … Lewis." Doc. #47 at 6–8. Specifically, they argue Lewis "effectively removed his application from consideration" when he resigned under the former administration and, because Phelps did not take office until January 2020, Lewis has "no viable claim of retaliation or political patronage under § 1983 based on the alleged actions that Shane Phelps may have undertaken during his campaign or while sheriff-elect." *Id.* at 7.

Lewis' retaliation claim is one for failure to hire.[7] It is undisputed that Phelps did not hire Lewis once Phelps assumed his position as sheriff. Because Phelps, as sheriff, made the decision not to hire Lewis, Phelps was then acting under color of state law. Any prior intent by Phelps not to hire Lewis was reaffirmed then. *See Brady v. Fort Bend Cnty.*, 145 F.3d 691, 701 (5th Cir. 1998) (when sheriff-elect assumed office, "he reaffirmed his intention not to rehire the Plaintiffs and gave effect to that intent by not rehiring the Plaintiffs").

## B. First Amendment Retaliation

To establish a First Amendment retaliation claim under § 1983, a plaintiff must show (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in the speech outweighed the defendant's interest in promoting efficiency; and (4) his speech motivated the adverse employment action. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591

---

[7] *See* Doc. #1 at 4 ("As a result of his campaigning and making public statements in support thereof, Sheriff Shane Phelps refused to rehire Plaintiff resulting in a loss of employment with Defendants.").

5

(5th Cir. 2013). Courts analyze First Amendment retaliation claims under the *Mt. Healthy City School District Board of Education v. Doyle*[8] "mixed-motives" framework, not the *McDonnell Douglas* pretext analysis used in Title VII cases. *Id.* at 596 n.1. Under *Mt. Healthy*, if the plaintiff sets forth a prima facie retaliation case, the defendant-employer "may avoid liability by showing a legitimate reason" for which it would have made the employment decision "even in the absence of [the plaintiff's] protected conduct. Finally, the plaintiff may rebut by showing the employer's proffered reason is pretextual." *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 332 (5th Cir. 2021) (cleaned up).

The defendants seem to concede that Lewis' speech involved a matter of public concern[9] and that his interest in the speech outweighed their interest in promoting efficiency.[10] The parties dispute whether Lewis suffered an adverse employment decision in light of his resignation and whether Lewis has provided evidence sufficient to establish a causal connection between his protected conduct and not being rehired.

### 1. Adverse employment decision

The first prong of a First Amendment retaliation claim requires a plaintiff to show he suffered an adverse employment decision. *Haverda*, 723 F.3d at 591. "Adverse employment decisions include discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (internal quotation marks omitted).

The defendants rely on Lewis' resignation to argue that he could not have suffered an adverse employment decision. Doc. #47 at 9–10. In response, Lewis argues he suffered an adverse

---

[8] 429 U.S. 274 (1977).

[9] "[A]n individual's political candidacy clearly qualifies as a matter of public concern." Doc. #47 at 9.

[10] "The Plaintiff's Interest in Speaking Outweighed the Governmental Defendant's Interest in Promoting Efficiency." Doc. #47 at 11.

6

employment decision when Phelps did not hire him after becoming sheriff and that the fact he was no longer an employee when Phelps took office "is irrelevant as Mr. Phelps did not condition his decision on hiring people on whether they were currently employed by the Sheriff's department." Doc. #51 at 6–7.

The summary judgment record shows Lewis applied for a deputy sheriff position under Phelps' administration on November 25, 2019, he then resigned from his deputy sheriff position under Darby's administration on December 18, 2019, and he was not hired by Phelps once Phelps became sheriff. The defendants assert that Lewis "effectively removed his application from consideration"[11] when he resigned under Darby's administration but they provide no authority to support this assertion. As mentioned above, Lewis' claim is one for failure to hire. And a refusal to hire constitutes an adverse employment decision in First Amendment retaliation cases. *See Juarez*, 666 F.3d at 332; *Mt. Healthy*, 429 U.S. at 283–84 (a public employer violates the First Amendment "if the decision not to rehire [an employee] was made by reason of his exercise of constitutionally protected First Amendment freedoms"). Accordingly, the Court concludes Lewis suffered an adverse employment decision.

### 2. Speech as motivating factor

The fourth prong of a First Amendment retaliation claim requires a plaintiff to show that his protected First Amendment activity was a substantial or motivating factor for the adverse employment decision. *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013) (citing *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001)). To satisfy this prong, Lewis must establish that one of the reasons Phelps did not hire him was his candidacy against Birge and his support of Darby. *See id.*

---

[11] Doc. #47 at 7.

The defendants argue summary judgment is appropriate because Lewis' protected conduct had no impact on Phelps' decision not to hire him and Lewis has provided no evidence to support his claim otherwise. Doc. #47 at 14–15. Further, the defendants point out that Phelps hired numerous officers who supported Darby and provided such officers' affidavits testifying to the same.[12] *Id.* at 13–14.

Lewis' argument as to whether his speech was a motivating factor consists of just two sentences:

> There is also no dispute as to the causal connection between Plaintiff's protected activity and Mr. Phelps [sic] decision not to hire Plaintiff. Plaintiff engaged in protected activity in October 2019 up until the election in November 2019, and Mr. Phelps announced his decision to not hire Plaintiff on December 18.

Doc. #51 at 7–8. Lewis contends the officer affidavits proffered by the defendants are insufficient because they do not show Phelps knew of the officers' support for Darby when he hired them. *Id.* at 9–10.

"[D]irect evidence of retaliatory motive is not necessary to show causation" as a plaintiff may rely on "circumstantial evidence to form a chronology of events from which retaliation may plausibly be inferred." *Bosque v. Starr Cnty.*, 630 F. App'x 300, 305 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997)). "Close timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a prima facie retaliation case." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (internal quotation marks omitted). However, "[t]iming alone does not create an inference that the [adverse action] is retaliatory." *Beattie*, 254

---

[12] *See* Doc. #46-4 (Jeremy Denley affidavit); Doc. #46-6 at PageID 601 (Matt Cote affidavit); *id.* at PageID 603 (Tim "Sparky" Campbell affidavit); *id.* at PageID 605 (Darius Smith affidavit); *id.* at PageID 607 (Clint Roberson affidavit); *id.* at PageID 609 (Bobby Billingsley affidavit); *id.* at PageID 611 (Tripp Williams affidavit); *id.* at PageID 613 (Adrian Kirkwood affidavit); *id.* at PageID 615 (Britton Crawford affidavit); *id.* at PageID 617 (Chantryce Morris affidavit); *id.* at PageID 619 (Terry Anderson affidavit).

8

F.3d at 605.

Here, it is undisputed that Lewis spoke at a rally in October of 2019, Phelps was present at the rally, Lewis applied for a position under Phelps' administration, Lewis was not interviewed, and Lewis was not hired when Phelps took office in January 2020. But this timing alone is not sufficient circumstantial evidence from which a retaliatory motive can be inferred considering the natural timeframe between the election of a new sheriff and the new sheriff taking office and hiring new deputies. *Cf. Mooney*, 538 F. App'x at 454–55 (chronology of events, when viewed in the context of other evidence, was sufficient to infer retaliatory causation as to employee's discharge when events began immediately after protected conduct).

Regarding the officer affidavits and Phelps' knowledge of who supported Darby when he made his hiring decisions, the defendants submitted the affidavits in part to support their assertion that "[p]olitical support and/or affiliation was not a decision point for Phelps in selecting deputies to hire." Doc. #46 at PageID 514. Lewis' decision to simply and baldly contest the sufficiency of the affidavits' content does not satisfy his summary judgment burden of producing evidence to support his claim. *See Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 726 (5th Cir. 2021) ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."). Consequently, because Lewis has not shown a fact issue exists as to whether his political candidacy and his support of Darby was a motivating factor for Phelps' decision to not rehire him, summary judgment is proper.

### 3. *Mt. Healthy* affirmative defense

Even if the Court presumed Lewis met his burden of showing his protected conduct was a substantial or motivating factor in the decision not to hire him, the defendants "may still avoid

9

liability by showing, by a preponderance of the evidence," that Phelps would not have hired Lewis regardless of his protected conduct. *Haverda*, 723 F.3d at 591–92. If the defendants can do so, Lewis must then overcome that showing by presenting evidence that the defendants' explanation is merely pretextual. *Id.* at 592. If he can do so, "the determination whether the employer's stated reasons are pretextual is a fact issue reserved for the jury." *Id.* at 595–96. In this case, the Court finds Lewis has not presented evidence to create an issue of fact regarding whether the defendants' reason is pretextual.

The defendants argue the reason Lewis was not hired was because of "his multiple shortcomings as an officer of the Law." Doc. #47 at 14. Specifically, the defendants reference an E911 call log and audio recording of a "911 Officer Needs Assistance" call on June 25, 2019, to which they allege Lewis did not respond. *See* Doc. #46-5, #54. Phelps testified he was made aware of the incident shortly after it occurred and that he did not hire Lewis

> because of that call … when there was … a fight with about 20 people with guns and bats … and Mr. Lewis refused to go because he was eating. That's why I did not hire him. **Because if I had been Sheriff then, I would have fired him right then on the spot that night**.

Doc. #46-3 at 19 (emphasis added).[13]

In response, Lewis asserts that he did not refuse to go on the call but rather asked the dispatcher to send someone else because he was "in the drive-thru lane at a Wendy's" that "had a guard rail that prevented cars from leaving" and other deputies were closer. Doc. #50-1 at 4. Although Lewis avers he did not refuse to go on the call, his admission that he did not go to the scene when the dispatcher called does not create a fact issue concerning whether the failure to go

---

[13] The defendants also provided affidavits of numerous officers testifying to "personal encounters with Lewis—describing him as lazy, unreliable, and selfish." Doc. #47 at 14; *see supra* note 12. To the extent Lewis argues the officers' affidavits do not establish Phelps knew of any issues with his conduct as a deputy sheriff when Phelps decided not to hire him, even if the Court does not consider the affidavits, Phelps testified during his deposition that he was aware of the officer needs assistance call before deciding not to hire Lewis.

10

was Phelps' reason for not hiring him. *See Haverda*, 723 F.3d at 596 ("[S]imply disputing the underlying facts of an employer's decision is not sufficient to create a fact issue."). The same is true regarding Lewis' assertion that "[a]t no time during [his] employment did [he] receive any written reprimands or discipline of any kind while working for the sheriff's department." Doc. #50-1 at 1. The E911 call log and audio recording both support the fact that Lewis did not go to the scene when he was called. *See* Doc. #46-5 at 1 ("Attempted to dispatch [Lewis] to this disturbance; he did not go enroute and advised another deputy to make scene and let him know if he was needed.").

The question is not whether Lewis *could* have not been hired for failing to go to the scene but whether he *would* have not been hired had he not engaged in protected speech. *See Haverda*, 723 F.3d at 595. Phelps' testimony that "if [he] had been Sheriff then, [he] would have fired [Lewis] right then on the spot that night"[14] is sufficient to carry the defendants' burden of showing that Phelps would not have hired Lewis regardless of his protected conduct.[15]

To try to establish pretext, Lewis argues the defendants "materially altered their reason for not hiring [him] throughout discovery" and "with[eld] relevant documents that were requested … only to produce them for the first time as exhibits to their motion for summary judgment." Doc. #51 at 8. Lewis relies on the defendants' supplemental responses to interrogatory numbers two and six served on March 29, 2021. *See* Doc. #50-6.

Interrogatory number two asked the defendants to "[i]dentify all documents which in any way support, pertain to, or relate to the subject matter of this lawsuit or the claims asserted in your Answer to Plaintiff's Complaint." *Id.* at PageID 786. The defendants' original response referred

---

[14] Doc. #46-3 at 19.

[15] It follows that if Phelps did not hire Lewis because of this June 2019 incident, the fact that he did not interview Lewis does not create a fact issue regarding pretext.

11

to Lewis' personnel file containing his previously produced resignation letter. *Id.* Their supplemental response referenced affidavits obtained from officers, identified in the supplement, which the defendants described as "attorney work products … prepared in anticipation of litigation" such that "any request for production of such affidavits is objected to by Defendants." *Id.*

Interrogatory number six asked the defendants to "[p]lease explain in detail each and every fact or event of which Defendant is aware which support Defendant's allegations that the Plaintiff was not discriminated or retaliated against." *Id.* at 787. The defendants' original response referred to Lewis' resignation letter. *Id.* Their supplemental response asserts that Lewis

> resisted responding to calls, avoided responding to an "officer needs assistance" call on June 25, 2019, was unprofessional in his response to an automobile accident to which he was called in 2019, worked in other employment at the same time he was on duty with the Sheriff's Department, demonstrated shallow and incomplete investigation skills, and was generally not trusted by many of the deputies with whom he worked.

*Id.*

Lewis characterizes the supplemental responses as being inconsistent with the original responses. However, the defendants have consistently taken the position that Lewis' retaliation claim fails because of his resignation such that the responses are not contradictory. *Cf. Bosque*, 630 F. App'x at 305 (acknowledging inconsistent statement when deponent admitted interrogatory answer was not accurate and provided other reason for termination). Even still, "pointing out inconsistencies in the [employer's] stated justifications … does not by the mere fact itself create the opposite inference that the [employer] harbored retaliatory motivation." *Brady*, 113 F.3d at 1425. And though Lewis argues the defendants intentionally withheld relevant documents during discovery, such is a discovery complaint and Lewis never moved to compel discovery of such

information.[16] *See, e.g.*, *Glover v. City of Dallas*, 221 F. App'x 311, 313 (5th Cir. 2007) (plaintiff's assertion that defendant "improperly withheld information" was "a discovery complaint and … not evidence of pretext"); *see also* Fed. R. Civ. P. 37(a) ("[A] party may move for an order compelling disclosure or discovery."); L.U. Civ. R. 7(b)(2)(C) ("A party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time to effectuate the court's order before the discovery deadline."); *Lillie v. Off. of Fin. Inst. State of La.*, 997 F.3d 577, 587 (5th Cir. 2021) ("[T]he Federal Rules of Civil Procedure place the onus on the discovery-seeker to invoke the judicial process.").

While mindful of the Fifth Circuit's guidance that "summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate," *Haverda*, 723 F.3d at 595, Lewis has failed to create a fact issue as to whether Phelps' reason for not hiring him is pretextual. Because the Court has found no First Amendment violation arising from Phelps' failure to hire Lewis, the defendants' motion for summary judgment will be granted.[17]

## V
## Motions in Limine

Having found summary judgment proper on Lewis' claim, a trial in this case is not necessary. Accordingly, the pending motions in limine will be denied as moot.

## VI
## Conclusion

The defendants' motion for summary judgment [46] is **GRANTED**. The defendants' motion in limine [57] and Lewis' motion in limine [58] are both **DENIED as moot**. A final

---

[16] The affidavits Lewis claims were intentionally withheld during discovery bear little weight on the Court's summary judgment ruling as the ruling is largely based on Phelps' deposition testimony.

[17] Because the Court has already concluded that no constitutional violation has occurred, "[it] need not address whether [Phelps] w[as] entitled to qualified immunity." *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017).

judgment will issue separately.

      **SO ORDERED**, this 2nd day of March, 2022.

<u>**/s/Debra M. Brown**</u>        
**UNITED STATES DISTRICT JUDGE**
